UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

Eastern District of Kentucky
FILED

JUL 09 2026

AT COVINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

**CRIMINAL ACTION NO. 2:25-CR-93-SCM**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **PLEA AGREEMENT**

**FELIX SAMUEL FLORES-NOVAS** **DEFENDANT**

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 3 and 4 of the Indictment, charging violations of 21 U.S.C. § 331, Unlawful Distribution of a Counterfeit Drug, and 21 U.S.C. § 846, Conspiracy to Distribute Controlled Substance. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts 1 and 2.

2. The essential elements of Count 3 are:

(a) The Defendant sold or dispensed a drug that is counterfeit; and

(b) The sale or dispensation affected interstate commerce.

The essential elements of Count 4 are:

(a) Two or more persons agreed to knowingly or intentionally possess methamphetamine with the intent to distribute;

(b) The defendant knew the essential objective of the conspiracy;

(c) The defendant knowingly and voluntarily involved himself in the conspiracy; and

(d) There was interdependence among the members of the conspiracy.

3. As to Counts 3 and 4, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) At all relevant times, the Defendant resided and worked in the Western District of Texas. On occasion, he shipped packages containing controlled substances and counterfeit drugs to the Eastern District of Kentucky.

(b) From at least on or about October 1, 2024, until November 5, 2025, the Defendant conspired with others to operate an online narcotics distribution organization (the "DTO"). In furtherance of the DTO's operations, coconspirators advertised the sale of Schedule I, II, and IV drugs from online platforms such as Protonmail, Telegram, and its own websites.

(c) Once customers placed an online order with the DTO, order information was provided to the Defendant, who packaged and shipped the ordered narcotics to the addresses provided, which were located around the country. Law enforcement received or intercepted numerous packages shipped by or to the Defendant. The narcotics and controlled substances shipped by or for the DTO and received or intercepted by law enforcement included:

| | |
|---|---|
| Cocaine | 527 grams |
| Methamphetamine | 2,909 grams |
| MDMA | 24 grams |
| Psilocyn/psilocybin | 454 grams |
| D-Lysergic Acid Diethylamide/Lysergide | 29 grams |

(d) To facilitate his role in the conspiracy, the Defendant obtained large quantities of narcotics for further shipment, which he stored at an apartment he maintained for the purpose of receiving, storing, manipulating, and packaging controlled substances. On November 5, 2025, law enforcement executed a search warrant at this apartment, and located large quantities of controlled substances, including:

| | |
|---|---|
| 4-bromo-2,5-dimethoxyphenethylamine (2C-B) | 0.811 grams |
| Bromazolam methamphetamine | 0.821 grams |
| Methamphetamine | 588.452 grams |
| Bromazolam | 0.283 grams |
| psilocyn/psilocybin | 380.1 grams |
| Heroin | 120.091 grams |

| | |
|---|---|
| Fentanyl | 48.537 grams |
| Alprazolam | 354.914 grams |
| Phenazolam | 0.277 grams |
| Methylenedioxymethamphetamine (MDMA) | 256.536 grams |
| Ketamine | 243.325 grams |
| Amphetamine | 20.565 grams |
| N,N-dimethyltryptamine | 31.311 grams |

Additionally, law enforcement located over 900 ounces (25 kilograms) of liquid methamphetamine that was sampled for testing and later destroyed.

(e) The DTO advertised pressed pills, an indication that they were counterfeit. Lab results testing the oxycodone, Adderall, and alprazolam pills all possessed or shipped by the Defendant confirmed these items were counterfeit, as did representatives from each pharmaceutical company that legitimately manufactures these controlled substances.

(f) Specifically, on or about May 22, 2025, the Defendant distributed an adulterated drug, that is, counterfeit Xanax and Adderall pills, which shipped from Texas to the Eastern District of Kentucky.

4. The statutory punishment for Count 3 is imprisonment for not more than 10 years, a fine of not more than $250,000, and a term of supervised release of not more than 3 years. The statutory punishment for Count 4 is imprisonment for not more than 20 years, a fine of not more than $1,000,000, and a term of supervised release of not more than 3 years. A mandatory special assessment of $200 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2025 manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all counterfeit drugs or other controlled substances in the Defendant's possession or shipped by the Defendant.

(c) Pursuant to U.S.S.G. § 2D1.1(a)(5), 2D1.1(c)(2), the base offense level is 36.

(d) Pursuant to U.S.S.G. § 2D1.1(b)(7), increase the offense level by 2 levels for the DTO distributing a controlled substance through mass-marketing by means of an interactive computer service

(e) Pursuant to U.S.S.G. § 2D1.1(b)(12), increase the offense level by 2 levels for the Defendant maintaining a premises for the purpose of manufacturing or distributing a controlled substance.

(f) Pursuant to U.S.S.G. § 2D1.1(b)(13), increase the offense level by 2 levels for the marketing as a legitimately manufactured drug another mixture or substance containing fentanyl, with reckless disregard that such a mixture or substance was not the legitimately manufactured drug.

(g) Pursuant to U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2(a), decrease the offense level by 2 levels.

(h) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(i) Pursuant to U.S.S.G. § 4C1.1(a), if the Defendant qualifies, decrease the offense level by 2 levels for the Defendant being a Zero Points Offender.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property seized during this investigation, including:

- Blue Apple iPhone 13 Pro (with black case).
- HP Laptop, Model 15-dy5033dx, S/N: 5CD34689LH (with cord)
- HP Laptop, Model 17-CA2083dx, S/N: 5CG4161G9H
- MacBook Pro Laptop, Model A1278, S/N: CTMPX4MADV30
- Black Cruzer Glide 32gb thumb drive
- Black Apricorn encrypted thumb drive
- Black Google phone
- White Apple iPhone

The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the

assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's

Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court

imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

13. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this

Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT UNITED STATES ATTORNEY

Date: 7/9/26 By: ______________________
Kathryn M. Dieruf
Assistant United States Attorney

Date: 7/9/26 ______________________
Felix Samuel Flores-Novas
Defendant

Date: 7/9/26 ______________________
Brandon Moermond
Attorney for Defendant